# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **COURTNEY TAYLOR**, and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> **ATYG LLC,** doing business as Steady Capital Solutions, a New York limited liability company, <br><br> *Defendant.* | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Courtney Taylor ("Plaintiff Taylor" or "Taylor") brings this Class Action Complaint and Demand for Jury Trial against Defendant ATYG LLC doing business under the assumed name Steady Capital Solutions ("Defendant Steady Capital" or "Steady Capital") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by sending text messages to consumers with telephone numbers registered on the Do Not Call Registry ("DNC") without consent. The Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Taylor, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigations conducted by her attorneys.

1

## PARTIES

1. Plaintiff Taylor is a resident of Aubrey, Texas.

2. Defendant ATYG LLC is a New York limited liability company headquartered in Brooklyn, NY.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant has its headquarters in this District.

5. The venue is proper under 28 U.S.C. § 1391(b) because the Defendant reside in this District and the unlawful conduct giving rise to this case was directed by the Defendant from this District.

## INTRODUCTION

6. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress

have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful robocalling technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

11. According to online robocall tracking service "YouMail," 5.0 billion robocalls were placed in March 2023 alone, at a rate of 161.1 million per day. www.robocallindex.com (last visited April 30, 2023).

12. The FCC also has received an increasing number of complaints about unwanted calls. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

13. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

14. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

15. Defendant Steady Capital provides loans to businesses.

16. Defendant Steady Capital hires independent contractors to generate leads for its business, including using text message marketing.

17. In Plaintiff's case, the text message did not identify the company name but identified the individual who sent the text message Jason Bay who claims to work as the Regional Sales Manager for Steady Capital Solutions:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf



[3]

18. According to Albert Mizrahi, the CEO of Defendant Steady Capital, Jason Bay is a pseudonym of an independent contractor of Defendant Steady Capital. (see exhibit 1 Declaration of Albert Mizrahi).

19. In the Declaration, Mizrahi admits that Bay sent text messages on behalf and for the benefit of Steady Capital:

> 16. The text messages included in the Complaint appear to be from Jason Bay. (*See* Ex. B, ¶¶ 30-31.) Jason Bay is the pseudonym of an independent contractor of SCS and he was an independent contractor of SCS on April 24-25, 2023. In his role, Jason Bay occasionally sent text messages on behalf and for the benefit of SCS. [4]

20. From Mizrahi's admission, it is clear that Defendant was aware that its independent contractors like Jason Bay were sending text messages to consumers on behalf of Steady Capital.

21. Defendant by or through their independent contractor sent out unsolicited text messages to consumers *en masse*, including text messages to

---

[3] https://www.linkedin.com/in/jason-bay-a64179180/
[4] Id. – page 4

consumers who registered their phone numbers on the DNC, as per Plaintiff's experience.

22. Defendant is aware of, consented to, and/or acquiesced in Bay's sending text messages to consumers, as described above.

23. The Federal Communication Commission has instructed that companies such as Steady Capital may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

24. In this case, the text messages were sent out by an independent contractor directly on behalf of the Defendant.

25. In response to these unsolicited text messages, Plaintiff brings this case seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act by placing calls to phone numbers that are registered on the DNC without consent, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF TAYLOR'S ALLEGATIONS

26. Plaintiff Taylor is the subscriber and the sole user of the cell phone number ending with 0073.

27. Plaintiff Taylor registered her cell phone on the DNC on October 19, 2004 and she uses it as one would use a landline in a home.

28. The telephone number is not associated with a business.

29. Plaintiff Taylor has owned her cell phone number for over 20 years.

30. On April 24, 2023 at 1:55 PM, Plaintiff Taylor received an unsolicited text message to her cell phone from the Defendant soliciting business funding, from 229-235-0614:



31. On April 25, 2023 at 9:17 AM, Plaintiff Taylor received a 2nd unsolicited text message from the Defendant soliciting business funding, again from phone number 229-235-0614:



32. When 229-235-0614 is contacted, Jason Bay identifies himself as an employee working for Steady Capital Solutions.

33. In emails, based on an investigation conducted by Plaintiff's attorneys, Bay uses the email address jason@steadycapitalsolutions.com and presents himself as a Steady Capital Solutions employee:

> If you would like to move forward with the funding for your business I will need the following:
>
> - Please send over the most recent 3 months of business bank statements
> - Please click here to complete the Underwriting Application
>
> **Jason Bay**
>
> 
>
> Main #: (917)-685-0743
>
> Email: Jason@Steadycapitalsolutions.com
>
> Application Link: Underwriting Application
>
> We are rated **4.7** out of **5**
>
> 
>
> 

34. Plaintiff Taylor never provided consent to Defendant or any of its affiliated companies/agents to send text messages to her cell phone number.

35. The unauthorized solicitation text messages that Plaintiff Taylor received from the Defendant, as alleged herein, have harmed Plaintiff Taylor in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phones' battery) and the consumption of memory on the phone.

36. Seeking redress for these injuries, Plaintiff Taylor, on behalf of herself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

37. Plaintiff Taylor brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

9

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of the Defendant, called/texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason that Defendant called/texted Plaintiff.

38. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Taylor anticipates the need to amend the Class definitions following appropriate discovery.

39. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and the Plaintiff is a member of the Class because she received text messages as part of the same telemarketing campaign resulting in text messages sent to other Class members.

40. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    (a)    whether Defendant's conduct violated the TCPA;

    (b)    whether the Defendant sent multiple text messages to Plaintiff and members of the DNC class without first obtaining consent to send the text messages;

    (c)    whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

41. **Adequate Representation**: Plaintiff Taylor will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in class actions. Plaintiff Taylor has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Taylor, and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff Taylor, nor her counsel have any interest adverse to the Class.

42. **Appropriateness**: This class action is also appropriate for certification because the Defendant acted or refused to act on grounds generally applicable to the

Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Taylor. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Taylor and the Do Not Call Registry Class)**

43. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

44. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on

the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

45. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

46. The Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as the Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

47. The Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of the Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47

13

U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

48. To the extent the Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Taylor, individually and on behalf of the Class, prays for the following relief:

a.) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Taylor as the representative of the Class; and appointing her attorneys as Class Counsel;

b.) An award of actual and/or statutory damages and costs;

c.) An order declaring that the Defendant's actions, as set out above, violate the TCPA;

d.) An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e.) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Taylor requests a jury trial.

**COURTNEY TAYLOR**, individually, and on behalf of all others similarly situated,

DATED this 7th day of January, 2024.

By: /s/ Stefan Coleman
Stefan Coleman
**Coleman PLLC**
11 Broadway, Suite 615
New York, NY 10001
law@stefancoleman.com
Telephone: (877) 333-9427


Avi R. Kaufman*
kaufman@kaufmanpa.com
**KAUFMAN P.A.**
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

*\* Pro Hac Vice motion forthcoming*